# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| RICHARD ALTON SANDERSON,           ) | |
| ) | |
| Plaintiff,                         ) | |
| ) | |
| v.                                 ) | Case Number: 6:14-cv-00069-JHE |
| ) | |
| CAROLYN W. COLVIN, ACTING          ) | |
| COMMISSIONER OF SOCIAL             ) | |
| SECURITY ADMINISTRATION,           ) | |
| ) | |
| Defendant.                         | |

## MEMORANDUM OPINION[1]

Plaintiff Richard Alton Sanderson ("Sanderson") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Sanderson timely pursued and exhausted his administrative remedies. The case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

Sanderson was a forty-seven year old male at the time of the Administrative Law Judge ("ALJ") decision. (Tr. 22, 23). Sanderson has limited education and previously worked as a welder fitter. (Tr. 22).

Sanderson filed his application for a period of disability, DIB and SSI on November 8,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 14).

1

2010, alleging an initial onset date of December 31, 2002. (Tr. 114-29). The Commissioner denied Sanderson's application, and Sanderson requested a hearing before an ALJ. (Tr. 70-71). On September 13, 2012, the ALJ found he was not disabled. (Tr. 9-23). Sanderson sought review by the Appeals Council, but, despite accepting new evidence into the record, it declined his request for review on November 22, 2013. (Tr. 1-5). On that date, the ALJ's decision became the final decision of the Commissioner. On January 14, 2014, Sanderson initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine, in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2013.

section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Sanderson met the insured status requirements of the Social Security Act through December 31, 2014, and that Sanderson had not engaged in substantial gainful activity since October 22, 2010, the alleged onset date of his disability. (Tr. 14). At Step Two, the ALJ found Sanderson has the following severe impairments: degenerative disc disease of the cervical and lumbar spine and headaches/development venous abnormality ("DVA"). (Tr. 15). At Step Three, the ALJ found Sanderson does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-18).

Before proceeding to Step Four, the ALJ determined Sanderson's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Sanderson has the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)"; "can perform postural movements such as bending,

stooping, crouching and crawling occasionally" but "never climb ladders, ropes or scaffolds"; and "should avoid all exposure to concentrated heat and cold temperature extremes and high humidity," as well as unprotected heights. (Tr. 18).

At Step Four, the ALJ determined Sanderson is not able to perform his past relevant work. (Tr. 21-22). At Step Five, the ALJ determined, based on Sanderson's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy Sanderson could perform. (Tr. 22-23). Therefore, the ALJ determined Sanderson has not been under a disability and denied his claim. (Tr. 23).

## V. Analysis

Although the Court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The Court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Sanderson contends the ALJ erred by improperly applying the Eleventh Circuit pain standard, (doc. 12 at 4-10), and failing to properly articulate good cause for according less weight to the opinion of Sanderson's treating physician, (*id.* at 11-14).

### A. The ALJ's Adverse Credibility Finding Regarding Sanderson's Subjective Pain Testimony is Supported by Explicit and Adequate Reasons, as well as Substantial Evidence

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other

subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.* Failure to articulate such reasons requires the testimony be accepted as true as a matter of law. *Id.*

The ALJ found Sanderson's medically determinable impairments could reasonably be expected to cause the alleged symptoms, satisfying the pain standard and establishing his testimony as sufficient to support a finding of disability. (Tr. 19). However, the ALJ must still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991), and substantial evidence, *see Foote*, 67 F.3d at 1561-62. The ALJ discussed Sanderson's allegations in the context of his medical history and found Sanderson's "statements regarding symptoms and functional limitations only partially credible." (Tr. 19-21).

Sanderson's first argument breaks out a single thread of the ALJ's argument and argues the whole thing is therefore not supported by substantial evidence. (Doc. 12 at 4-6). He contends the ALJ refused to credit his testimony of disabling neck and back pain because of two isolated incidents of activity in one of which he fell off of a ladder in December 2011 and the

other he was picking up a weed eater in May 2012.  (*Id.* at 5) (citing tr. 19).  Sanderson argues extensively that "participation in everyday activities of short duration, such as housework or fishing does not disqualify a claimant from disability."  (*Id.* at 5) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1441 (11th Cir. 1997)).  Sanderson concludes that "[f]or the ALJ to rely on two isolated events to discredit the Plaintiff's testimony based on his 'daily activities' renders it not based on substantial evidence."  (*Id.* at 6).

That conclusion may have been true if those two isolated events were the only bases for discrediting Sanderson's testimony.  However, in that same paragraph, the ALJ also cited extensively to objective medical testimony.  (Tr. 19).  Acknowledging Sanderson had been diagnosed with degenerative disc disease of the cervical and lumbar spine, the ALJ also noted MRI evidence showed the condition to be very mild with no nerve root impingement and other tests were normal with normal ranges of motion, normal gait and station, the ability to squat and arise without difficulty.  (*Id.*).  Consistent with that evidence, Dr. Boyde Harrison, a consultative physician, concluded the claimant was capable of performing work related activity in spite of his low back pain.  (*Id.*).  Lastly, the ALJ compared Sanderson's statement his pain was so severe it caused him to stay in bed most of the day with ER records evidencing the two incidents Sanderson references.  (*Id.*).  The ALJ concluded Sanderson's "allegations of disabling neck and back pain are not supported by his daily activities *or the objective medical evidence*."  (*Id.*) (emphasis added).

Sanderson then separately addresses the objective medical evidence support for the ALJ's conclusion.  (Doc. 12 at 6).  To support his contention the ALJ's conclusion is not supported by the medical evidence, he points to the same tests showing mild and mild-to-moderate issues as the ALJ cited in her decision.  (*Id.*).  Sanderson does not explain why these results showing

"mild" conditions support his contention of debilitating pain; instead, he shifts focus to his DVA and headaches. (*Id.* at 6-7).

The ALJ, Sanderson argues, "incorrectly minimize[d] the impact of the abnormalities shown by objective medical evidence and ignore[d] [Sanderson]'s continued complaints and treatment for his debilitating pain." (*Id.* at 7) (citing SSR 96-7P 1996 WL 374186 at *7 (noting a longitudinal medical record of a followed treatment supports allegations of pain)). Sanderson points to a history of seeking treatment for his headaches, from late 2009 through 2012, including his frequent reports to his doctors his medication was not helping. (*Id.* at 7-10). He concludes "[t]he longitudinal medical record overwhelmingly supports [his] testimony regarding his disabling pain and limitations."

Although Sanderson's longitudinal history of seeking treatment for pain (much of which occurred after he filed for disability) supports his testimony to some extent, it is not conclusive. There is also substantial evidence in the record undermining his credibility. Despite his claims of debilitating pain and ineffective medication, his physicians found him several times to be in less distress than he claimed. On January 28, 2011, Sanderson reported a pain level of 10 of 10 to the ER, but the hospital records indicated he "really appear[ed] to be in no acute distress." (Tr. 301-02). In March 2011, Sanderson wore sunglasses to his consultative examination with Dr. Harrison, saying they were necessary to protect his eyes, but Dr. Harrison found his pupils reactive to light with no signs of photophobia. (Tr. 285). Furthermore, the ALJ noted Sanderson's credibility was undermined by the fact he had applied for and received unemployment income until August 9, 2010. (Tr. 14). Such benefits in Alabama are explicitly precluded where the claimant is unemployed due to sickness or disability. (*Id.*) (citing Ala. Code § 25-4-77 & -78). "The ALJ's conclusion that the receipt of unemployment benefits is a factor

undermining [Sanderson]'s credibility is consistent with . . . the great weight of legal authority." *Turner v. Colvin*, No. 5:12-CV-2648-LSC, 2013 WL 5574920, at *4 (N.D. Ala. Oct. 10, 2013) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161–62 (9th Cir. 2008); *Workman v. Comm'r, Soc. Sec. Admin.*, 105 F. App'x 794, 801–02 (6th Cir. 2004) (per curiam) (unpublished); *Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994); *Peden v. Comm'r, Soc. Sec. Admin.*, No. 2:12-cv-0081-AKK, 2012 WL 5379172, at *5 (N.D. Ala. Oct. 31, 2012)).

The record contains such relevant evidence as a reasonable person would accept as adequate to support the ALJ's conclusion Sanderson's testimony of severe, debilitating pain was not credible in light of the medical and other evidence. As this constitutes substantial evidence and is based on application of the proper legal standards, the undersigned may not override that conclusion.

## B. The ALJ Properly Weighed Treating Physician Testimony

Sanderson contends the ALJ's decision is not supported by substantial evidence because the ALJ did not articulate good cause for according less weight to the opinion of Sanderson's treating physician, Dr. Keith Morrow. (Doc. 13 at 9). Under 20 C.F.R. § 404.1527(c)(2), a treating physician's opinion is given controlling weight where it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Accordingly, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. Good cause to reduce the weight given to a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357

F.3d 1232, 1241 (11th Cir. 2004).

Sanderson notes Dr. Morrow makes three separate statements in the record. First, he cites to Dr. Morrow's statement "Mr. Sanderson is <u>unable to work</u> due to these medical conditions." (Doc. 12 at 11) (quoting tr. 339) (emphasis from Sanderson's brief). Second, he cites a letter from Dr. Morrow setting out Sanderson's issues, how they affect his daily life, and that he is "unable to work" and, "if he tried to work he would miss an estimated forty plus days yearly." (*Id.* at 11-12) (quoting tr. 366). Lastly, Sanderson points to a letter from Dr. Morrow stating that Sanderson had been referred to UAB for further testing, that Sanderson had reported severe symptoms, that Sanderson's medication could interfere with concentration or cause side effects, and that Dr. Morrow believes Sanderson to be "permanently and totally disabled." (*Id.* at 12) (quoting tr. 389).

First, any part of Dr. Morrow's opinion on a subject reserved to the commissioner is not entitled to special significance. *See* 20 C.F.R. § 404.1527(d)(3). Specifically, this includes all of the statements Dr. Morrow makes to the effect Sanderson is "unable to work" or "permanently and totally disabled." *See* 20 C.F.R. § 404.1527(d)(1). The ALJ also pointed out many of Dr. Morrow's statements are based entirely on Sanderson's subjective reports and not entitled to special deference. (Tr. 20-21) (citing *Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985) ("The opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or when it is unsubstantiated by any clinical or laboratory findings.") (internal quotation marks omitted)). (*See also* tr. 366 ("Mr. Sanderson regularly relates . . . . He relates . . . ."), 389 ("Mr. Sanderson has frequently related . . . . He relates that . . . .")).

Dr. Morrow further stated Sanderson was limited in lifting, repetitive motion activities, and climbing, crawling, and repetitive bending and "would miss an estimated forty plus days

10

yearly." (Tr. 366) Some of these facts were incorporated into the RFC, (*see* tr. 18) (imposing limitations on bending, crawling, climbing, and lifting), but the ALJ generally found the clinical and objective evidence did not support Dr. Morrow's opinions, (tr. 21). The ALJ observed some of the information in Dr. Morrow's opinions was not accurate, noting that, contrary to Dr. Morrow's statement, Sanderson had a DVA but not a cerebral aneurysm. (Tr. 21). The medical evidence supports a DVA, (tr. 251, 307), but Dr. Alsharabati, another treating physician, noted "no significant intracranial aneurysm or source that would be suspicious for bleeding in the future," (tr. 341). Dr. Morrow also cited osteoarthritis of the spine and knees. (Tr. 366). However, testing showed only mild spinal issues with no evidence of nerve root impingement, (tr. 32-13), and the medical record shows no evidence of disabling osteoarthritis of the knees as examinations revealed Sanderson's gait and station were normal with full strength in all extremities, (tr. 21, 286, 341, 350). Dr. Morrow also mentioned mood disorders and concentration issues, (tr. 366), but the ALJ noted psychological complaints and treatment were not otherwise in evidence from anyone other than him, (tr. 21). Moreover, Dr. Alsharabati found no neurological issues despite the complaints of severe pain. (Tr. 341).

The ALJ's decision to discount Dr. Morrow's opinion applied the correct legal principles and is supported by substantial evidence.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Sanderson's claim for a period of disability, disability insurance benefits, and supplemental security income is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 3rd day of March 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE